CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYLLIS ANN HILL, Debtor, | |
| Appellant, | Civ. No. 06-3265 (JAP) |
| v. | Bank. No. 04-30325 |
| | **OPINION** |
| ANDREA DOBIN, Trustee, | |
| Appellee. | |

APPEARANCES:

Bruce D. Atkinson
Atkinson & DeBartolo
P.O. Box 8415
Red Bank, NJ 07701
   *Attorney for Appellant*

Valerie A. Hamilton
Sterns & Weinroth
50 West State Street, Suite 1400
Trenton, NJ 08607
   *Attorney for Appellee*

PISANO, District Judge.

     Pursuant to 28 U.S.C. § 158(a)(1), Debtor Phyllis Hill ("Hill") has appealed the United States Bankruptcy Court's June 14, 2006 orders granting summary judgment in favor of the Trustee and denying Hill's request that her interest in two annuities be excluded from her bankruptcy estate. The issue presented here is whether Hill's interest in the annuities qualifies for exclusion from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Resolving some

disagreement among the bankruptcy courts in this district, the Court holds that an asset is excluded from the bankruptcy estate under § 541(c)(2) if (1) the asset represents the debtor's beneficial interest in a trust, (2) there is a restriction on transfer, and (3) the restriction is enforceable under an applicable non-bankruptcy law. *See* 11 U.S.C. § 541(c)(2). This involves a case-by-case approach requiring the bankruptcy courts to analyze the terms of the particular annuity at issue and determine whether it satisfies the elements necessary for exclusion. As explained below, the Court finds that Hill's annuities do not satisfy the requirements of § 541(c)(2) because they do not qualify as trusts. Accordingly, Hill's annuities are not excluded from her bankruptcy estate and the orders of the Bankruptcy Court are affirmed.

## I. BACKGROUND

On June 16, 2004, Hill filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Among the assets Hill listed in her original petition was an annuity with Guardian Insurance and Annuity Company, Inc. ("GIAC"), which she improperly identified as Park Avenue Securities. As of June 30, 2004, the GIAC Annuity had a value of $73,202.79. Hill later amended her petition to include an American Express Privileged Asset Annuity Certificate ("AMEX Annuity"), which had a value of $31,415.05 as of June 30, 2004. In her petition, Hill stated her belief that both annuities were excluded from her bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

The Trustee filed a complaint on June 13, 2005 seeking a determination that both annuities were property of the bankruptcy estate. After Hill filed an answer on September 23, 2005, both parties filed motions for summary judgment wherein the Trustee requested an order that the annuities were assets of the debtor estate and Hill sought an order that the annuities were

excluded from the estate.  At the close of oral argument on June 12, 2006, the Bankruptcy Court rendered a decision in favor of the Trustee.  After reviewing the terms of the AMEX Annuity, the Bankruptcy Court determined that the annuity was not excluded from Hill's bankruptcy estate because it had none of the indicia of a trust.  Specifically, the Court found that the annuity was not a trust because "it doesn't have a fiduciary relationship, there's no manifest intent to create a trust, and there's no duty on the part of [AMEX] to deal with the property for the benefit of any person."  Transcript of Hearing at 17, *Dobin v. Hill* (*In re Hill*), Ch. 7 Case No. 04-30325, Adv. No. 05-19401 (Bankr. D.N.J. June 12, 2006).  Similarly, upon examining the GIAC Annuity documents, the Court noted that the annuity did not give rise to a fiduciary relationship, there was no trustee, and GIAC held the funds as an asset of the company, not as trust property.  *Id.* at 22-23.  The Court concluded, therefore, that Hill had no more than a "contractual debtor creditor relationship" with GIAC.  *Id.*  On June 14, 2006, the Court entered orders granting summary judgment in favor of the Trustee and denying Hill's cross-motion for summary judgment.  Hill timely filed an appeal of these orders on July 19, 2006.

## II.  DISCUSSION

### A.  Standard of Review

The Court has jurisdiction over this appeal pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(a).  The district court reviews a bankruptcy court's legal conclusions under a plenary standard.  *See J.P. Fyfe, Inc. of Fla. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989).  Factual determinations, however, may be set aside by the district court only if they are clearly erroneous.  *See* Fed. Rule Bankr. Proc. 8013; *J.P. Fyfe, Inc. of Fla.*, 891 F.2d at 69.  The issue presented in this appeal is a question of law:  whether Hill's annuities

should be excluded from her bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Thus, the Court will apply a plenary standard of review.

### B. Section 541 of the Bankruptcy Code

Pursuant to Section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. § 541(a)(1), a bankruptcy estate includes "all legal or equitable interests of the debtor in property" as of the creation of the bankruptcy estate "[e]xcept as provided in subsections (b) and (c)(2)." Subsection (c)(2) states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Several courts have addressed the question of whether § 541(c)(2) covers annuities and the results vary. *Compare In re Barnes*, 264 B.R. 415 (Bankr. E.D. Mich. 2001) (finding that TIAA annuity did not qualify as a trust and thus was not excluded from the debtor estate under § 541(c)(2)); *In re Neto*, 215 B.R. 939 (Bankr. D.N.J. 1997) (finding that lottery annuity is part of debtor estate); *In re Simon*, 170 B.R. 999 (Bankr. S.D. Ill. 1994) (concluding that annuity, which court determined was not a trust, is part of debtor estate); *Walro v. Striegel*, 131 B.R. 697 (S.D. Ind. 1991) (same) *with In re Quinn*, 327 B.R. 818 (W.D. Mich. 2005) (finding a pension plan annuity excluded from the bankruptcy estate under § 541(c)(2); *In re Schuster*, 256 B.R. 701 (Bankr. D.N.J. 2000) (finding the annuities at issue were trusts and thus excludable under § 541(c)(2)). Further, neither the Supreme Court nor the Third Circuit has dealt squarely with this issue.

In *Patterson v. Shumate*, 504 U.S. 753 (1992), the Supreme Court analyzed § 541(c)(2) and held that the antialienation provision in an ERISA-qualified plan "constitute[d] an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the

4

bankruptcy estate." *Patterson*, 504 U.S. at 757-60.  In so holding, the Court noted that the "natural reading of [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any applicable nonbankruptcy law." *Id.* at 758.  Focusing on the Court's use of the phrase "plan or trust," some courts have concluded that § 541(c)(2)'s trust requirement no longer applies when the asset at issue is an ERISA-qualified plan.[1]  Another line of cases espouses the view that non-ERISA qualified employer pension plans are not subject to a strict trust requirement.[2]  There is, however, nothing in *Patterson*, or the statute for that matter, suggesting that the trust requirement does not apply to a non-ERISA annuity.  *See generally id.*; *Barnes*, 264 B.R. at 425 ("Rather than 'categorically' eliminating § 541(c)(2)'s trust requirement, . . . the most that one can plausibly infer from *Shumate* . . . is that the requirement is not applicable to ERISA-qualified plans.").

In *In re Yuhas*, 104 F.3d 612, 613 (3d Cir. 1997), the Third Circuit held that a New Jersey statute "that protects a qualified individual retirement account (IRA) from claims of creditors

---

[1] *See, e.g.*, *In re Reuter*, 11 F.3d 850, 852 (9th Cir. 1993) ("Under *Shumate*, a court need look no further than whether the ERISA-qualified plan at issue has an anti-alienation provision that satisfies the literal terms of § 541(c)(2)."); *Mfrs. Bank & Trust Co. v. Holst*, 197 B.R. 856, 859 (N.D. Iowa 1996) ("Once the plan is determined to be ERISA-qualified, the inquiry is finished.").

[2] *See, e.g.*, *Morter v. Farm Credit Servs.*, 937 F.2d 354, 357 (7th Cir. 1991) (finding that courts have exhibited a "willingness to exclude [a pension] plan if it is employer-created and controlled and, therefore, analogous to a spendthrift trust"); *Matter of Goff*, 706 F.2d 574, 589 (5th Cir. 1983) (finding that employer-created and controlled retirement plans may be characterized as spendthrift trusts for the purposes of § 541(c)(2) even though they are not traditional spendthrift trusts); *In re Atallah*, 95 B.R. 910, 919 (Bankr. E.D. Pa. 1989) ("Section 541(c)(2) is not limited to traditional spendthrift trusts, but also applies to pension funds which exhibit the characteristics of a spendthrift trust."). *But see Barnes*, 264 B.R. at 428 ("There is no statutory support for the notion that in determining whether a trust was created, employee benefit plans are subject to a less stringent standard than are other assets in which the debtor holds an interest.").

constitutes a 'restriction on the transfer of a beneficial interest of the debtor in a trust' within the meaning of 11 U.S.C. § 541(c)(2) and thus result[ed] in the exclusion of the IRA from a bankruptcy estate." Notably, the Court did not address the issue of whether IRAs qualify as trusts for the purpose of § 541(c)(2); instead, the Court assumed that the IRA satisfied the trust requirement because the parties did not raise that issue on appeal. Subsequent to the *Yuhas* decision, however, some bankruptcy courts within the Third Circuit have concluded that IRAs are not trusts and thus not eligible for exclusion under § 541(c)(2). *See, e.g.*, *In re Haney*, 316 B.R. 827, 829 (Bankr. E.D. Pa. 2004); *In re Williams*, 290 B.R. 83, 87 (Bankr. E.D. Pa. 2003); *In re Fulton*, 240 B.R. 854, 865-66 (Bankr. W.D. Pa. 1999).

In any event, there is no doubt that the *Yuhas* decision preserves the trust requirement set forth in § 541(c)(2). In deciding whether the IRA at issue was excluded from the bankruptcy estate, the *Yuhas* Court employed a five-part test, which states that:

> (1) the IRA must constitute a "trust" within the meaning of 11 U.S.C. § 541(c)(2); (2) the funds in the IRA must represent the debtor's "beneficial interest" in that trust; (3) the IRA must be qualified under Section 408 of the Internal Revenue Code; (4) the[re] . . . must be a "restriction on the transfer" of the IRA funds; and (5) this restriction must be "enforceable under nonbankrupcty law."

*Yuhas*, 104 F.3d at 614. The Court notes that, contrary to the interpretation of some bankruptcy courts, the *Yuhas* five-part test is not one of general applicability. Specifically, there is no requirement in § 541(c)(2) that the asset be qualified under Section 408 of the Internal Revenue Code. The *Yuhas* Court added that prong because the restriction on transfer upon which the debtor relied in that case—N.J.S.A. § 25:2-1(b)—applied only to qualifying trusts, defined in N.J.S.A. § 25:2-1(b) as "trust[s] created or qualified and maintained pursuant to . . . section 408 . . . of the federal Internal Revenue Code of 1986." *Yuhas*, therefore, does not suggest that for an

6

asset to be excluded from a bankruptcy estate under § 541(c)(2) it must be qualified under Section 408 of the Internal Revenue Code.  Rather, that requirement simply addressed whether the particular restriction on transfer applied to the asset at issue in *Yuhas*.

      This Court holds that, in order to demonstrate that an asset is excluded from a bankruptcy estate pursuant to § 541(c)(2), the debtor must establish that:  (1) the asset represents the debtor's beneficial interest in a trust, (2) there is a restriction on transfer, and (3) the restriction is enforceable under an applicable non-bankruptcy law.  *See* 11 U.S.C. § 541(c)(2); *Yuhas*, 104 F.3d at 614; *see also In re Wilcox*, 233 F.3d 899, 904 (6th Cir. 2000).  The debtor bears the burden of establishing that these requirements are met.  *In re Adams*, 302 B.R. 535, 540 (B.A.P. 6th Cir. 2003).  The nature of this test does not allow for a bright line rule resolving the issue of whether annuities, in general, are excluded from the bankruptcy estate under § 541(c)(2).  Rather, a case-by-case approach is necessary:  the bankruptcy courts must examine the annuity documents in each case to determine whether the specific annuities at issue satisfy the three elements set forth above.

      The Court notes that the likely result of this test—particularly because of the trust requirement—will be that many annuities do not qualify for exclusion from bankruptcy estates. Such a result, however, is not inconsistent with the congressional policy "encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans, and IRAs." *Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991).  Indeed, there is no federal statute evincing a goal to encourage or protect investments in annuities.[3]  Moreover, to the extent that Congress wants to

---

[3] It should be noted that an annuity is not necessarily a vehicle for retirement savings. There are many reasons why one might choose to purchase an annuity, not the least of which is to achieve the tax benefits that annuities typically provide.

protect annuities from the claims of bankruptcy creditors, it has the ability to amend the Bankruptcy Code. As it stands now, the plain language of § 541(c)(2) makes clear that only a debtor's "beneficial interest in a *trust*" is eligible for exclusion under that section. 11 U.S.C. § 541(c)(2) (emphasis added).

   1. The Elements of a Trust

The Bankruptcy Code does not define the term trust. Consequently, the Court relies on the common understanding of the term to discern the elements of a trust. *Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.") (citations and internal quotation marks omitted). Pursuant to the Restatement of Trusts, a trust is a

> fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.

RESTATEMENT (THIRD) OF TRUSTS § 2 (2003). Borrowing from that definition, the elements of a trust are: (1) a manifestation of intention to create a trust; (2) a trust *res*; (3) a trustee who is bound by a fiduciary duty to deal with the property for another's benefit; and (4) a division of title between the trustee who holds legal title to the property and the beneficiary who retains equitable title.

   2. Restriction on Transfer

The Bankruptcy Code broadly defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the

debtor's equity of redemption." 11 U.S.C. § 101(54). Thus, "[a]ny procedure by which funds in [a trust] might be reached to satisfy the claims of creditors would seem to fall within this broad definition . . . ." *Yuhas*, 104 F.3d at 614 (citations and internal quotation marks omitted). The source of the restriction may be state law, *see id.* at 614-15, federal law, *see Patterson*, 504 U.S. at 760, or the annuity itself, *see Barnes*, 264 B.R. at 437.

      3.  Enforceable Under Applicable Non-bankruptcy Law

Though some courts previously held the view that only state law could be the source of the "applicable non-bankruptcy law" under § 541(c)(2), *Patterson* established that "any relevant non-bankruptcy law," whether state or federal, satisfies the requirement. *Patterson*, 504 U.S. at 759 ("Plainly read, [§ 541(c)(2)] encompasses any relevant nonbankruptcy law, including federal law . . . ."); *see also Yuhas*, 104 F.3d at 614 n.1 ("Applicable nonbankruptcy law includes both federal law such as ERISA, . . . and state law . . . .") (internal citations omitted).

    *C.  Hill's Annuities*

At the outset, the Court notes that the annuities at issue are neither ERISA-qualified plans nor pension plans created and controlled by an employer. Therefore, even assuming that ERISA-qualified plans and pension plans are subject to a less exacting test, there is no basis upon which to relax the requirements of § 541(c)(2) in this case.

Both the AMEX Annuity and the GIAC Annuity are subject to a "restriction on transfer . . . that is enforceable under applicable nonbankrutpcy law." In fact, N.J.S.A. 17B:24-7 is the source of both the restriction on transfer and the applicable nonbankruptcy law. *See Yuhas*, 104 F.3d at 614-16 (relying on New Jersey statute as the source of the restriction on transfer and the applicable nonbankruptcy law). The statute, which expressly protects annuities from the claims

of creditors, states:

> The benefits, rights, privileges, powers and options which under any annuity contract heretofore or hereafter issued are due or prospectively due the annuitant, shall not be subject to execution, garnishment, attachment, sequestration or other legal process nor shall the annuitant be compelled to exercise any such rights, privileges, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract . . . .

N.J.S.A. 17B:24-7(a).  Therefore, the only issue in dispute is whether the annuities qualify as trusts.

Hill argues that both of her annuities should be excluded from the estate under § 541(c)(2) because all annuities are trusts or, in the alternative, the annuities satisfy all of the elements of a trust.  The Trustee counters that Hill's annuities do not qualify as trusts and that Hill has not carried her burden of demonstrating that the annuities are excluded from her bankruptcy estate.  As explained above, this Court does not take the view that all annuities are trusts.  Courts must review the annuity documents to determine whether the particular annuity at issue satisfies the statutory requirements of § 541(c)(2), including the trust requirement.  As explained below, having reviewed the annuity documents for both the AMEX Annuity and the GIAC Annuity, the Court concludes that neither annuity qualifies as a trust.  Accordingly, the annuities are not excludable from Hill's bankruptcy estate.

    1.  The AMEX Annuity

The terms of the AMEX Annuity, a fixed annuity, describe it as a long-term savings plan into which the owner (Hill) deposits monthly contributions.  AMEX, in turn, agrees to repay those deposits plus interest to Hill or a designated beneficiary beginning on an agreed upon date in the future.  AMEX determines the applicable interest rate depending upon current economic

conditions, yields on AMEX's current investments, and projected yields on future investments. Hill has the right to withdraw funds from the annuity and to send extra payments at any time. AMEX owns and controls the monthly contributions and has unrestricted use of those funds. Moreover, the use of the funds has no bearing on the final value of the Annuity. To the extent that AMEX neglected to make the scheduled payments to Hill or the designated beneficiary, the owner would have a contract claim against AMEX, and if it became insolvent, the annuity owner would become a creditor.

Tellingly, Hill spends no more than four sentences of her sixteen page brief explaining why the AMEX Annuity should be excluded from her bankruptcy estate under § 541(c)(2). Further, Hill does not identify any evidence demonstrating her manifestation of an intention to create a trust, the existence of a trust *res*, a division of title between beneficiary and trustee, or the existence of a trustee. Nor could she, because the annuity documents reveal that the AMEX Annuity does not satisfy the elements of a trust. The documents demonstrate that the AMEX Annuity creates a debtor-creditor relationship, not a trust, in which AMEX "contractually guarantees" Hill's "contributions and . . . interest earnings." Thus, there is no evidence of a manifested intention to create a trust. Nor is there an identifiable *res*: AMEX has unrestricted use of the premium payments and is bound only to pay Hill an amount similar to her contributions plus interest at a specified date in the future.

Further, there is no division of title. AMEX holds legal and equitable title[4] to Hill's

---

[4] "'Equitable title' may be defined as 'the beneficial interest of one person whom equity regards as the real owner, although legal title is vested in another.'" *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 n.3 (Fed. Cir. 1991) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)).

premium payments because AMEX, by contract, bears the risk of loss arising out of its use of the premium payments. *See Barnes*, 264 B.R. at 434. Finally, the annuity documents do not identify a trustee; indeed, AMEX does not assign itself the role of trustee or undertake an obligation to invest the owner's premium payments for her benefit. Therefore, the AMEX Annuity is not a trust. It represents no more than a debtor-creditor relationship and thus is not excluded from Hill's bankruptcy estate under § 541(c)(2).

    2. The GIAC Annuity

Under the terms of the GIAC Annuity, Hill could select either a fixed rate option or a variable option. The variable option, which Hill chose, allowed her to allocate her premiums to certain investment vehicles—mostly mutual funds—and have her funds kept in The Guardian Separate Account E ("Account E"). As with the AMEX Annuity, Hill had the right to withdraw funds from the GIAC Annuity. GIAC owns the assets held in Account E, but those assets are kept separate from GIAC's general and other accounts. Though "[a]ssets equal to the reserves and contract liabilities of Account E [are] not charged with liabilities that arise from any other business GIAC may conduct," GIAC maintains the right to "transfer assets in excess of the reserves and contract liabilities to its general account." Thus, although not entirely clear, it appears that, were GIAC to become insolvent, the Account E assets would become subject to receiver control and/or liquidation. The size of the payments that Hill would receive beginning on the annuity commencement date—the date on which GIAC would begin sending monthly payments to Hill—depended upon the success of Hill's investments. Also, Hill had the right to withdraw funds from the annuity account.

The GIAC Annuity presents a closer question than the AMEX Annuity, principally

because there is evidence of a division of title: GIAC, by the terms of the annuity documents, holds legal title and Hill retains an equitable interest in the funds she has paid into the annuity because she bears the risk of loss. *See id.* at 434. Indeed, her payments were used to purchase variable annuity units, the value of which could increase or decrease depending upon the performance of the annuity portfolio. Unlike the *Barnes* court, however, this Court does not adopt the view that division of title conclusively establishes that the asset is a trust. *See id.* at 432 ("The *sine qua non* of a trust is the division of ownership rights in the subject property—the trust beneficiary holding equitable title thereto but the trustee holding legal title.").

Further, there are three factors that counsel against a finding that the GIAC Annuity qualifies as a trust. First, the annuity documents consistently refer to the GIAC Annuity as a contract. Though the Court will not afford controlling weight to the parties description of their relationship without analyzing its substance, the Court finds that the parties' consistent and repeated use of the word contract is persuasive evidence that the parties did not intend to create a trust. *See Walro*, 131 B.R. at 701 ("[C]ourts will not simply assume that an annuity is a trust in the absence of evidence that the parties had the specific intent to create a trust . . . .").

Second, there is no indication in the annuity documents that GIAC has assumed the role of trustee. Although, as Hill points out, GIAC reserved the right "to serve the best interests of the owner and any beneficiary," GIAC is not *bound by a fiduciary duty to do so*. Thus, the Court finds that there is no trustee. Third, it appears that there is no trust *res*. It is true that GIAC purported to hold Hill's payments in Account E, keeping them separate from their other accounts and shielding the funds from any liabilities that could result from GIAC's other business activities. The annuity documents indicate, however, that GIAC could remove assets equal to

13

those in Account E.  Thus, the implication is that GIAC did have access the funds purportedly kept separately in Account E.  In sum, the GIAC Annuity does not meet all of the elements of a trust.  Therefore, Hill has failed to carry the burden of establishing that the GIAC Annuity is excluded from her bankruptcy estate under § 541(c)(2).  *See Adams*, 302 B.R. at 540.

Notwithstanding the fact that the GIAC and AMEX Annuities fail to satisfy § 541(c)(2), Hill suggests that her interest in the annuities should be excluded from her bankruptcy estate because there is a policy favoring the "[u]niform treatment of property interests," to prevent "a party from receiving a windfall merely by the reason of happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979) (internal quotation marks and citation omitted); *Patterson*, 504 U.S. at 764.  A decision not to exclude the annuities in this case violates that policy, according to Hill, because it means that the happenstance of bankruptcy allows her creditors to access funds that would be otherwise be protected under N.J.S.A. 17B:24-7(a).  The flaw in Hill's argument is that she requests uniform treatment of assets which she characterizes differently depending on the applicable law.  Specifically, Hill suggests that her assets are trusts for the purpose of federal law (§ 541(c)(2)) and annuities for the purpose of state law (N.J.S.A. 17B:24-7(a)).  Hill cannot have it both ways, and the Court declines her invitation to give two different names—each with legal significance—to the same asset in order to achieve what she calls "uniform treatment."[5]

She further argues that failure to exclude the annuities under § 541(c)(2) will encourage

---

[5] The Bankruptcy Court reached a similar conclusion: "[I]f [Hill were] able to convince me that the contracts were actually trusts, I don't think they'd get the benefit of the state law because the state law exclusion only applies to annuities.  So it seems to me that you can't have it a trust for federal law and an annuity for state law purposes." Transcript of Hearing at 17, *Dobin v. Hill* (*In re Hill*), Ch. 7 Case No. 04-30325, Adv. No. 05-19401 (Bankr. D.N.J. June 12, 2006).

creditors to "engage in the strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds." *Patterson*, 504 U.S. at 764. That concern, however, is not valid where, as here, the debtor filed a *voluntary* bankruptcy petition.

## III.  CONCLUSION

For the reasons explained above, the Court finds that Hill's annuities do not satisfy the requirements of § 541(c)(2) because they are not trusts. Therefore, the AMEX Annuity and the GIAC Annuity are not excluded from Hill's bankruptcy estate. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  December 4, 2006